

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 64 | DATE | 3/19/2004 |
| CASE TITLE | Collins vs. Sparacio, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendants' motion for summary judgment [24-1] is granted. Plaintiff's motion to strike [27-1] is denied. All other motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 36 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 3/19/2004 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THOMAS A. COLLINS, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

STEVEN SPARACIO and LAW OFFICES OF STEVEN J. SPARACIO,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

DOCKETED
MAR 2 2 2004

No. 03 C 0064
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Plaintiff, Thomas A. Collins ("Collins"), brings this putative class action against Steven J. Sparacio and the Law Offices of Steven J. Sparacio (collectively "Sparacio") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* This court's jurisdiction is invoked pursuant to 15 U.S.C. § 1692(k). Before the court is Sparacio's motion for summary judgment. For the reasons stated below, Sparacio's motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving

party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Central to disposition of this motion is an understanding of the relationship between two entities, Areawide Cellular, LLP ("Areawide") and Cellular One. Areawide served as an independent agent and dealer for Cellular One. (Def. L.R. 56.1 ¶ 16.) Cellular One sold its cellular telephone services through authorized agents and dealers rather than directly to the public. (*Id.*) Authorized agents and dealers, including Areawide, were responsible for providing demonstrations of Cellular One's services, explaining its benefits and the terms and conditions of the services, and selling telephones. (Def. L.R. 56.1 ¶ 17.) Areawide would in most scenarios sell a customer a cellular telephone and a cellular telephone calling plan for a specified number of minutes per month. (Def. L.R. 56.1 ¶ 18.) The cellular telephone services would then be provided by Cellular One, who would issue monthly bills to the customers for the services. (Def. L.R. 56.1 ¶ 19.) Typically, a customer who purchased a telephone and a cellular telephone calling plan from Areawide would sign two separate contracts, one with Areawide and another with Cellular One. (Def. L.R. 56.1 ¶ 20.)

2

Areawide was compensated by Cellular One on a commission basis. (Def. L.R. 56.1 ¶ 21.) To earn its commission, a customer would have to remain on the calling plan with Cellular One for a certain period time, ranging from 180 to 365 days. (*Id.*) If a customer did not remain on the calling plan with Cellular One for the required time period, Areawide would forfeit its commission. (Def. L.R. 56.1 ¶ 22.) Areawide included a provision in its contract with customers for a cancellation fee of $300 which would cover the discounted cost of a telephone sold, its commission, and associated costs in the event that a customer canceled his or her services early. (Def. L.R. 56.1 ¶ 23.) Moreover, during the time of purchasing a cellular phone, customers with poor credit histories were often required to pay a $250 deposit to obtain the cellular phone services. (Def. L.R. 56.1 ¶ 24.) Such amounts were remitted by Areawide to Cellular One and Cellular One would either hold the deposit for a certain period of time or apply it to a customer's account. (Def. L.R. 56.1 ¶ 25.)

On November 8, 1999, Collins entered into two agreements, one with Areawide and the other with Cellular One. (Def. L.R. 56.1 ¶¶ 6, 8.) His agreement with Areawide was to purchase a cellular telephone and cellular telephone services. (Def. L.R. 56.1 ¶ 6.) The agreement provided that Collins agreed

> to remain on service with Areawide Cellular, an authorized Cellular One agent, for a minimum period of 730 days. In the event I change agents or suspend, cancel or reduce my service with Areawide Cellular, as described in this invoice, I authorize Areawide Cellular to either charge against my credit card as cancellation fee $300.00 or to cash my check in the amount of $300.00. If Areawide Cellular is unable to either charge my credit card for the cancellation fee or cash my check for any reason, I agree to pay Areawide Cellular the $300.00 cancellation fee within fifteen (15) days of changing agents or superseding, cancelling or reducing my service. If I fail to pay such fee within the 15-day period, I agree that I will be liable to Areawide Cellular for its court costs and reasonable attorney's fees accrued in collecting the same.

3

(Def. Ex. C.)

Collins's agreement with Cellular One was for cellular telephone services. (Def. L.R. 56.1 ¶ 8.) Collins was required to pay a $250 dollar deposit to obtain his cellular phone services. (Def. L.R. 56.1 ¶ 24.) The agreement provided that

> This Service Agreement, including these preprinted General Terms and Conditions and any documents expressly referred to herein (excluding the website referred to below) make up the complete agreement between you and Cellular One, and supersede any and all prior agreements and understandings relating to the subject matter of this agreement.

(Def. Ex. D.) This agreement also provided that "[i]f you terminate service before the end of the minimum Agreement Term, or if Cellular One terminates your service for nonpayment or other default before the end of the minimum Agreement Term, you agree to pay a $150.00 early termination charge." (*Id.*)

Within one year of signing his contracts with Areawide and Cellular One, Collins failed to make his regular monthly payments to Cellular One for his cellular telephone services and, therefore, Cellular One cancelled these services. (Def. L.R. 56.1 ¶¶ 10-11.) As a result, Cellular One charged Collins $150 for early termination of his account. (Pl. L.R. 56.1 ¶ 1.)

On January 23, 2002, Sparacio, an Illinois attorney, filed a law suit against Collins on behalf of Areawide. (Def. L.R. 56.1 ¶ 12.) That complaint, which first stated in the caption "Amount Claimed $600.00 + Costs," otherwise provided in its entirety:

> The plaintiff claims as follows
> 1. That pursuant to the specific request to the Defendant, Thomas A. Collins, the plaintiff did sell certain goods/wares and merchandise and/or certain services to the defendant as per Exhibit attached hereto.
> 2. That the plaintiff, Areawide Cellular LLC, has performed all that it was required to do to perform under the agreement.

4

3. That pursuant to the attached agreement the plaintiff is entitled to reasonable attorneys' fees of $300.00 plus collection fees in the sum of $0.00.
4. That plaintiff has demanded payment from the defendant in the sum of $300.00 which sum remains due.
Wherefore, plaintiff, Areawide Cellular LLC, prays for the judgment in the sum of $600.00.

(Compl. Ex. 1.)

## MOTION TO STRIKE

Before reaching the merits, the court addresses Collins's motion to strike portions of Sparacio's statement of material facts (¶¶ 14-25) and the affidavit of Samuel Schauer ("Schauer"). According to Collins, the affidavit of Schauer (and the paragraphs of the statement of facts which rely on the affidavit) must be stricken for a number of reasons, including because the affidavit is not based on personal knowledge, lacks foundation, is based on speculation or conjecture, and relies on inadmissible hearsay.

The affidavit reveals that Schauer was employed by Cellular One as a Credit Collection Manager, his duties included supervision of the activation of new customer accounts and overseeing the collection of past-due accounts. (Aff. ¶ 2.) Schauer affirmed that he is familiar with the relationship between Cellular One and Areawide and he understood that Areawide served as an independent agent and dealer for Cellular One. (Aff. ¶¶ 3, 4.)

None of Collins's arguments for dismissal of Schauer's affidavit are persuasive. Schauer adequately states that he was employed by Cellular One and, therefore, can testify from his personal knowledge about, among other things, the relationship between Cellular One and Areawide, payment of deposits by customers with poor credit, and the forfeiture of commissions

5

by dealers when customers failed to fulfill the terms of their contract. Accordingly, Collins's motion to strike Schauer's affidavit will be denied.

## DISCUSSION OF MERITS

Collins's theory of recovery is based on two portions of the FDCPA. First, he alleges that Sparacio falsely represented the character, amount or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A). Second, he alleges that Sparacio attempted to collect amounts not authorized by contract or law in violation of 15 U.S.C. § 1692f(1). The court will begin with Collins's claim under § 1692f(1).

### A. § 1692f(1).

Section 1692(f)(1) of the FDCPA provides,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following is a violation of this section:
> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Collins submits that Sparacio's filing of the state court complaint violated the above provision insofar as the complaint sought to collect amounts not expressly authorized by Collins's contract with either Areawide or Cellular One or permitted under law. According to Collins, the state court complaint sought to collect a $300.00 cancellation fee on behalf of Areawide. Collins argues that the amount of this debt was misrepresented because (1) any agreement between Collins and Areawide was superseded by the agreement between Collins and Cellular One and that agreement does not obligate Collins to pay the $300 cancellation fee to

6

Areawide, and (2) the $250.00 deposit given by Collins at the time of his contracting was kept as a penalty for Collins's alleged cancellation and Areawide cannot recover an additional $300.00 penalty.

Starting with the first part of this claim, Collins argues that the agreement he signed with Areawide must have been superseded by the contract he signed with Cellular One. Therefore, according to Collins, because the contract with Areawide has been superseded, attempts by Sparacio to collect that debt for Areawide serve as a violation of § 1692f(1). Collins cites no case in which a contract with a principal serves to supersede any separate contract entered into with an authorized agent or dealer. Nor can the plain language of the contract with Cellular One support such a theory, as the integration clause of that contract only provides that it makes up the "complete agreement between you and Cellular One, and supersedes any and all prior agreements and understandings relating to the subject matter of this agreement." As is apparent, the integration clause refers to the agreement between Cellular One and Collins and does not mention Areawide. Collins has no evidence of an agreement between Cellular One and Areawide whereby Areawide's contract would be superseded once a customer entered into a contract with Cellular One.

Collins, nevertheless, suggests that it is "inconsistent and contradictory" for Areawide and Cellular One to have entirely separate agreements while at the same time allowing Areawide to provide services to prospective customers of Cellular One, although he fails to explain why this is, in fact, inconsistent or contradictory. He also submits that the agreements themselves cannot be construed as entirely separate insofar as Sparacio has not established that with only one agreement, rather than two, a cellular phone user could have obtained the cellular phone service

Collins received. The court, however, finds Collins's argument in this regard wholly unpersuasive on the matter of supersession. If two agreements were needed to make the deal, there is less, rather than more, likelihood that Areawide's contract was superseded. Finally, he claims Cellular One may be justified in prohibiting its dealers/agents from having different arrangements with Cellular One customers, thereby validating the broad language contained in the integration clause. But he fails to realize that an independent agent/dealer may also be justified in contracting for the exact scenario that took place here, when the customer fails to abide by the terms of the contract, thereby causing the independent agent/dealer to forfeit its fee. Nothing Collins has submitted persuades the court to adopt his view that the Areawide contract was superseded by the Cellular One contract and his argument on this ground is rejected.

Collins also argues that the $300 cancellation fee payable to Areawide serves as a penalty. Although he does not make it clear, Collins apparently means to suggest that because the amount is a penalty (and therefore unenforceable under Illinois contract law, *see Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1160 (7th Cir. 1997)), Sparacio was attempting to collect an amount not permitted by law and, therefore, in violation of the FDCPA.

Collins's theory, at least applied to the facts of this case, is inappropriate. Collins seeks to hold Sparacio, who was not a party to the contract, responsible for an allegedly invalid liquidated damages clause contained in a contract between Areawide and Collins. He relies on *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), where the court held that, absent a *bona fide* error, an attorney who had demanded a penalty applicable to shoplifting ($250) from a debtor who had presented a dishonored check ($15 penalty), had used a means not authorized by existing Utah law and thus violated § 1692f. Section 1692f(1), as the court in *Johnson* pointed

out, "expressly defines as a violation of that provision '[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law.'" *Johnson*, 305 F.3d at 1117. The attorney in *Johnson* violated the FDCPA because he attempted to collect a debt based on a faulty interpretation of state law. Here, by contrast, the amount Sparacio sought to collect was expressly authorized by the agreement creating the debt and thus excepted from the statute's definition of unfair or unconscionable means of collection. *See Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997) (before deciding whether defendant attempted to collect unauthorized insurance premiums, court assumed that the insurance premiums were not authorized under the contract). Collins agreed to pay Areawide the amounts sought to be collected in the case of a breach. Although Collins might make his penalty argument against Areawide in defense of the collection law suit, Sparacio is insulated from liability by the terms of the statute.[1]

**B.    § 1692e(2)(A)**

Section 1692e(2)(A) of the FDCPA provides,

> A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ***
> (2) The false representation of–
> (A) the character, amount or legal status of any debt . . . .

Disclosures under this section of the FDCPA, as with other sections, must be made in a manner likely to be understood by an "unsophisticated consumer." *Barlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("it is implicit that the debt collector may not defeat the statute's purpose by

---

[1] In the state court action filed by Sparacio on behalf of Areawide, Collins asserted counterclaims alleging that Areawide sought to collect "inequitable" and "fraudulent" charges for early cancellation.

9

making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular object of the statute's solicitude.").

Collins argues that the state court complaint filed by Sparacio states the amount of the debt in a confusing way such that unsophisticated consumers would be unlikely to understand the amount the complaint seeks. Paragraph 3 of the state court complaint states that "the plaintiff is entitled to reasonable attorneys' fees of $300.00 plus collection fees in the sum of $0.00." In paragraph 4, the state court complaint also states that "plaintiff has demanded payment from the defendant in the sum of $300.00 which sums remains due." The *ad damnum* clause states, "Wherefore, plaintiff, Areawide Cellular LLC, prays for the judgment in the sum of $600.00." The caption of the state complaint also states "Amount Claimed $600.00 + Costs." Collins believes all of this makes for confusion to an unsophisticated debtor because it is unclear whether the state court complaint is seeking $300.00, $600.00, or over $600.00.

Viewing the state court complaint through the lens of an unsophisticated consumer, the court disagrees that the amount of the debt is stated in a confusing way. In paragraph 3 the complaint lists $300.00 for attorney's fees. In paragraph 4 it states that "plaintiff has demanded payment from the defendant in the sum of $300.00 which sums remains due." The *ad damnum* then states that it seeks judgment in the amount of $600.00. An unsophisticated consumer would have no trouble discerning that the $600 amount is derived by adding the two $300 amounts previously identified. *See, e.g., White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) ("[a]ny document can be misread. The [FDCPA] is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the

10

unsophisticated debtor, but not the irrational one."). Because Sparacio would not have known at the time precisely what Areawide's costs would ultimately be, he could not practicably have stated a liquidated amount for costs in the complaint. The unsophisticated consumer who has been in traffic court or any other court would know that costs refers to court costs. Collins has no authority for his position that a claim for a liquidated amount is rendered confusing because of the additional request for costs. Sparacio's motion for summary judgment on this claim, therefore, will also be granted.

## CONCLUSION

For the reasons stated above, Sparacio's motion for summary judgment is granted [#24]. Collins's motion to strike is denied [#27]. All other pending motions are denied as moot. This case is terminated.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 19, 2004